**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

REGIONS BANK, as Special Administrator                                    PLAINTIFF
for the Estate of Travis Lynn Hill, Deceased

v.                                      Case No. 4:06CV01475 JLH

JOHN WHITE and
DAILY EXPRESS, INC.                                                       DEFENDANTS

## OPINION AND ORDER

This is a diversity action brought by Regions Bank, as special administrator for the Estate of

Travis Lynn Hill, against the defendants, John White and Daily Express, Inc., seeking damages for

the death of Travis Lynn Hill, who sustained fatal injuries in a motor vehicular collision.   On

November 2, 2005, Hill was traveling west on Interstate 40 in Monroe County, Arkansas, when his

commercial vehicle, owned by Routh Transportation, collided with a tractor-trailer rig, which was

owned by Daily Express and driven by John White.

White says that he parked his truck and trailer outside the fog line and off the roadway, and

that Hill's vehicle crossed over the fog line and onto the shoulder of the road before the collision.

Regions Bank alleges that White's tractor-trailer was parked partially on the shoulder and partially

in the inside lane of traffic.   Hill's vehicle struck the rear axle of the trailer, and three days later he

died from injuries sustained in the crash.   His estate and the statutory beneficiaries subsequently

brought this action against White and Daily Express.

In preparation for trial, both sides have filed several motions *in limine*.

## I.  PLAINTIFF MOTIONS *IN LIMINE*

### A.    PREVIOUS CLAIMS AND SETTLEMENTS

The instant action was at one time consolidated with another lawsuit between individual

defendant John White and Hill's employer, Routh Transportation, which then filed suit against White and Daily Express. Routh Transportation reached a settlement agreement with the defendants in this action. Regions Bank has moved to exclude evidence of Routh Transportation's settlement with White and Daily Express pursuant to Federal Rules of Evidence 402, 403, and 408. Defendants do not object to Regions Bank's motion *in limine*, but they ask that the Court be willing to revisit the issue should some unanticipated development arise at trial that could make the evidence relevant and admissible. The Court will entertain new arguments at trial should an unforeseen development arise making the evidence of previous settlements potentially admissible. Regions Bank's motion *in limine* is granted.

## B.   WHITE'S MEDICAL CONDITIONS AND TREATMENT

John White was recently diagnosed with and treated for cancer. Regions Bank moves to exclude evidence of his diagnosis and treatment pursuant to Rules 402 and 403, arguing that it would inappropriately appeal to the jury's sympathy. Defendants anticipate that White will be present at trial. They ask that the Court reserve ruling on this motion in the event that White's medical condition somehow becomes relevant, since his illness might have some unforeseeable effect on his presence and participation. Because the Court cannot predict how or whether White's medical condition and treatment might affect his presence and participation at trial, and thus cannot conclude with certainty that it will not become relevant, the Court reserves ruling on Regions Bank's motion to exclude that evidence.

## C.   DECEDENT'S OUT-OF-COURT STATEMENTS

Shortly after the collision, but prior to his transportation to the hospital, Hill told witness Chris Milican that he had "nowhere to go." Regions Bank argues that Hill's statement to Milican

2

is admissible under Rules 803(1) (present sense impression), 803(2) (excited utterance), 804(b)(3) (dying declaration), and 807 (the residual exception).  Defendants have filed a motion *in limine* addressing these arguments, seeking to exclude Milican's testimony relative to Hill's statements (Docket #90).  Because Regions Bank's arguments really relate to whether Hill's statements to Milican should be excluded, the Court addresses this issue below under Defendants' motion *in limine*.

**D.    *PER DIEM* ARGUMENTS**

Regions Bank says that its damages includes the past, present, and future mental anguish of Hill's statutory beneficiaries.  Regions predicts it will make a *per diem* argument pursuant to *Vanlandingham v. Gartman*, 236 Ark. 504, 367 S.W.2d 111 (1963).  A *per diem* argument would calculate mental anguish by affixing an amount of anguish to each hour or day and multiplying that amount by the number of hours or days left in a plaintiff's life.  *See Ramstad v. Lear Siegler Diversified Holdings Corp.*, 836 F. Supp. 1511, 1522 (D. Minn. 1993).  Regions requests leave to make a *per diem* argument to the jury.

Defendants object.  They argue that closing arguments are procedural in nature and thus governed by federal law.  They point out that the Eighth Circuit has taken a cautious view toward *per diem* arguments, holding that they are arbitrary and artificial calculations.  *See Chicago & N.W. Ry. Co. v. Candler* 283 F. 881 (8th Cir. 1922).  Citing to at least one case in which a district court excluded *per diem* arguments, defendants say that the Court should either bar Regions from making *per diem* arguments or give the jury a proper limiting instruction.

"Argument of counsel is a procedural question to be determined by federal law."  *Illinois Central R.R. v. Staples*, 272 F.2d 829, 834 (8th Cir. 1959).  Although the Eighth Circuit does not

allow for instructions on *per diem* mathematical calculations, it does not "disapprove of *per diem* closing arguments as long as such arguments are carefully controlled by the district court." *Vanskike v. ACF Industries, Inc.*, 665 F.2d 188, 211 (8th Cir. 1981) (citing *Waldron v. Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969) (declining to adopt an inflexible rule of prohibition)). The Eighth Circuit has said that "unit-of-time calculations are arbitrary and artificial." *Id.* Therefore, a jury "should be cautioned that references to *per diem* damages in closing arguments are not evidence, but merely a form of argument, and that pain and suffering cannot be reduced to a precise arithmetic calculation." *Id.* (citing *Flanigan v. Burlington Northern, Inc.*, 632 F.2d 880, 886 (8th Cir. 1980); *Waldron*, 406 F.2d at 89)).

In *Ramstad v. Lear Siegler Diversified Holdings Corp.*, 836 F. Supp. 1511 (D. Minn. 1993), the district court refused to allow the plaintiffs to make a *per diem* argument to the jury. The court held that a *per diem* argument "would have improperly encouraged the jury to make an award based on an illegitimate and speculative basis rather than on an objective evaluation of the evidence." *Ramstad*, 836 F. Supp. at 1522. The court concluded that it would have misled and confused the jury and prejudiced the defendant to allow arguments on arbitrary and artificial calculations. *Id.* On the other hand, another judge of this Court has allowed a *per diem* argument. *Church v. Arnett Holdings, Inc.*, 2008 WL 4899524, at *2 (E.D. Ark. Nov. 12, 2008).

Following *Vanskike*, the Court will permit a *per diem* argument but will consider an instruction cautioning the jury that such arguments are not evidence but merely a form of argument, if the defendants so request.

## E.   PRIOR CRIMINAL HISTORY

In 2001, Hill was convicted of trafficking drugs. He was sentenced to prison and released

in April 2004.  After his release from prison, Hill obtained his commercial drivers license and joined Routh Transportation as a truck driver.  Regions argues that evidence of his conviction or involvement with drug trafficking should be excluded because it is irrelevant and inadmissible under Rule 402 and unfairly prejudicial under Rule 403.

Defendants disagree.  They point out that the jury instruction on damages for wrongful death asks the jury to consider the deceased's likely future earnings and habits of industry and sobriety. AMI 2216.  Defendants argue that Hill's conviction for drug trafficking is relevant to the jury's consideration of whether and to what degree his habits of industry and sobriety impact the measure of pecuniary damages.

Without conceding that the drug conviction is relevant to Regions' claim for pecuniary damages, Regions has filed a motion to withdraw its claim for pecuniary damages to avoid admission of Hill's prior criminal history.  Regions says that Defendants' only reason for proffering Hill's prior criminal history is to dispute the amount of pecuniary damages.  Regions seeks to avoid the prejudice that would result from admission of the criminal history.

Because Defendants also argue that Hill's criminal history would be relevant to contesting Dr. Ralph Scott's calculation of Hill's lifetime earnings, Regions will not present evidence in connection with the present value of Hill's lifetime earnings.  Regions does not move to dismiss its loss of life claim, but it will not offer a calculation of lifetime earnings as part of that claim.  Thus, Regions also withdraws the expert testimony of Dr. Scott, which was being offered only on calculation of the present value of Hill's lifetime earnings.

Because Regions has withdrawn its claims for pecuniary damages and the testimony of Dr. Scott, Regions' motion *in limine* to exclude Hill's prior criminal history is granted.  Defendants'

motion *in limine* to exclude Scott's expert testimony on loss of life damages is denied as moot.

## II. DEFENSE MOTIONS *IN LIMINE*

### A.  INDEPENDENT ACT OF NEGLIGENCE OF DAILY EXPRESS

Plaintiffs make claims against Daily Express both for the negligence of its agent, John White, and for other acts of negligence of Daily Express. Daily Express has admitted vicarious liability for the acts of White. Daily Express argues that once an employer admits vicarious liability for an agent's acts, the plaintiff cannot maintain his individual claims for negligence against the employer. Daily Express thus requests that the Court exclude any evidence of allegedly independent acts of negligence on its part.

Daily Express cites the Court to several cases: *Wheeler v. Carlton*, 2007 WL 30261 (E.D. Ark. 2008); *Moore v. Daniel Enterprises, Inc.*, 2006 WL 1155948 (W.D. Ark. 2006); *Elrod v. G & R Construction Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982); and *Kyser v. Porter*, 261 Ark. 351, 548 S.W.2d 128 (1977). In *Wheeler*, the plaintiff asserted claims against the employer trucking company both for negligence under a *respondeat superior* theory of liability and for negligent hiring and retention. The employer admitted vicarious liability. The district court relied on the Arkansas Supreme Court's decisions in *Elrod* (involving negligent entrustment) and *Kyser* in holding that the plaintiff could not proceed against the trucking company for negligent hiring and retention where the employer had admitted liability under *respondeat superior*. The *Wheeler* court summarized the rule in Arkansas as follows:

> When a defendant denies liability, no problem is encountered by allowing a plaintiff to proceed under two consistent theories of recovery such as *respondeat superior* and negligent entrustment. However, when defendant admits liability under one of plaintiff's theories of recovery such as *respondeat superior*, difficulties do arise and the authorities are divided on the issue whether plaintiff should be allowed to proceed

6

> on one or both theories.  In view of [*Kyser*], we are inclined to follow the majority
> view which allows plaintiff to proceed on only one theory of recovery in cases where
> liability has been admitted as to one theory of recovery.

*Wheeler*, 2007 WL 30261, at *11.  The court recognized an exception where the plaintiff makes a

claim for punitive damages, but Regions Bank does not seek punitive damages here, so that

exception is irrelevant.  *Id.* at *12.

In response, Regions Bank argues that this Court should apply the Federal Rules of Civil

Procedure, rather than the Arkansas substantive rule as set forth in *Kyser* and *Elrod*.  Regions relies

primarily on the Eighth Circuit's decision in *Breeding v. Massey*.  In that case, the Eighth Circuit

held that it was possible under an appropriate evidentiary setting to find an employer liable under

both scope of employment and negligent entrustment theories.  *Breeding*, 378 F.2d at 178.  However,

that case did not involve an employer that admitted vicarious liability for its employee's actions.

In *Moore*, a case cited by Daily Express, the plaintiff also relied on *Breeding* in arguing that

his claim for negligent entrustment was a "separate, independent and direct cause of action which

should not preclude an action for both *respondeat superior* and negligent entrustment."  *Moore*, 2006

WL 1155948, at *3.  The district court distinguished *Breeding*, in which the employer did not admit

vicarious liability.  The *Moore* court held that because the employer admitted liability for the actions

of its employee, the plaintiff was precluded from proceeding on his negligent entrustment claim.  *Id.*

This Court finds that the Arkansas rule set forth in *Elrod* and *Kyser*, and confirmed in

*Wheeler* and *Moore*, is inapposite here.  Daily Express has admitted that it is vicariously liable for

White's actions.  Because Daily Express has conceded vicarious liability for any negligent acts of

White's, Regions cannot proceed against Daily Express on the additional theories of negligent

retention,  hiring, or entrustment.  However, Regions makes no such claims.  Regions alleges that

7

Daily Express was negligent in failing to: have an adequate policy regarding the placement of triangles; adequately train its drivers regarding the placement of triangles; and have an escort vehicle available during the trip.  Regions also alleges that Daily Express negligently drafted and applied its policy regarding accident procedures, and that it was negligent in maintaining White's truck.

Regions does not claim that Daily Express negligently hired White, negligently retained him, or negligently entrusted him with the responsibility of operating a tractor-trailer.  Thus, *Wheeler* and *Moore* are inapposite.  Regions will be allowed to proceed on its independent claims of negligence against Daily Express, insofar as those claims do not assert negligent hiring, retention, or entrustment.  Daily Express's motion *in limine* to exclude any evidence regarding any alleged independent act of negligence is denied.

## B.   JOHN BENTLEY AND HIS PAST OR CURRENT WORK FOR DEFENSE COUNSEL'S FIRM

Regions Bank has designated John Bentley as its accident reconstruction expert.  Bentley has previously worked for the law firm representing Defendants.  Defendants move to exclude testimony or evidence informing the jury that Bentley has previously worked for Defendants' law firm because the evidence does not tend to make the existence of a fact more probable than not (Rule 401); such evidence is irrelevant (Rule 402); and it would be an improper bolstering of Bentley's credibility, and thus unfairly prejudicial or confusing to the jury (Rule 403).

In response, Regions cites the Court to two cases.  In *Burgess v. Larson's Grocery of Oxford, Inc.*, 2007 WL 2319837 (E.D. Ark. Aug. 10, 2007), the plaintiff's attorney had previously employed the defendant's medical expert.  The district court denied the motion to exclude reference to the witness's previous employment, since such references were proper for impeachment purposes. *Burgess*, 2007 WL 2319837, at *2.  In *Shaheen v. Advantage Moving and Storage, Inc.*, 369 Ill. App.

3d 535, 546-67, 860 N.E.2d 375, 385 (2006), the court permitted testimony that the plaintiff's expert witness had previously worked for the defendant's law firm for the purpose of rehabilitating the witness.

Although the Court cannot predict what questions Defendants may ask of Bentley, it may very well be that Bentley's credibility will be impeached.  In that event, Regions will be entitled to rehabilitate Bentley, and evidence that he has been engaged by the Defendants' law firm would be relevant for purposes of rehabilitation.  Regions may not present that evidence except for purposes of rehabilitation.  Defendants' motion *in limine* to exclude any testimony regarding Bentley's prior employment by Defendants' law firm is granted in part and denied in part.

## C.    PRESENCE OR ABSENCE OF ESCORT VEHICLE

Defendants move to exclude evidence regarding whether an escort vehicle should have accompanied White's vehicle on the date of the accident.  Defendants contend that they had no legal duty to provide an escort vehicle for White's tractor-trailer.  Defendants point out that no Arkansas statute or regulation required an escort vehicle for a tractor-trailer of the same height, length, or width as White's tractor-trailer.  Defendants argue that there is no proof that an escort vehicle would have prevented the accident.[1]

In support, Defendants cite to Ark. Code Ann. §§ 27-35-206 – 210, which provide the maximum width, height, and length dimensions for trucks traveling on Arkansas highways.  The statutes provide for special permits, and Daily Express's permit states that "[n]o escorts are required."  Defendants also cite to the Arkansas Transportation Department's regulations, which do

---

[1] Defendants also argue that the expert testimony of John Bentley cannot be used to establish a legal duty.  The testimony of John Bentley is the subject of another motion *in limine*, which the Court discusses below.

not require an escort vehicle for a tractor-trailer of the same dimensions as White's.  Defendants also cite to *Mangrum v. Pigue*, 359 Ark. 373, 386, 198 S.W.3d 496, 503 (2004), for the proposition that the plaintiff bears the burden of proving a negligent act or omission proximately caused the injury, rather than providing the jury with a choice of possibilities.  Defendants contend that because Regions offers no proof that the absence of an escort vehicle was a proximate cause, that evidence should be excluded as unduly prejudicial and confusing to the jury pursuant to Rule 403.

Regions responds that Daily Express had a duty of ordinary care.  The highway department permit stated no escorts were required, but it stated immediately thereafter, "UNLESS DEEMED NECESSARY FOR THE SAFETY OF THE TRAVELING PUBLIC."  (Emphasis in original).  As evidence that Daily Express should have provided an escort vehicle to fulfill its duty of ordinary care, Regions offers the Oklahoma and Alabama permits for the same trip, which required an escort vehicle.  Thus, Regions concludes that Daily Express should have known, based on the Oklahoma and Alabama permits, that an escort vehicle was necessary for public safety.

Daily Express owed a duty of ordinary care to all travelers on Arkansas highways.  A jury could conclude, based on the size of White's tractor-trailer, the Arkansas permit, and the Oklahoma and Alabama permits, that Daily Express breached its duty of ordinary care by failing to provide an escort vehicle to White while traveling through Arkansas.  On the issue of proximate cause, Regions offers the expert testimony of Bentley stating that an escort vehicle would have alerted approaching traffic with an active warning, would have positioned itself in advance of the wide load, and would have communicated by radio with White regarding the positioning of his load.  Based on the evidence, a jury could conclude that the absence of an escort vehicle was a proximate cause of the collision.  Defendants' motion *in limine* to exclude evidence on the absence of an escort vehicle is

denied.

**D.     PRESENCE OF SPECIFIED WARNING DEVICES**

As in the motion regarding an escort vehicle, Defendants move to exclude evidence of the absence of signal flashers, triangles, or other appropriate warning devices.  Defendants argue that there is no proof that the presence of specified warning devices would have prevented the collision, and thus no proof that the absence of warning devices was a proximate cause.  Thus, Defendants conclude that the evidence should be excluded as irrelevant under Rules 401 and 402, or as unduly prejudicial and confusing to the jury under Rule 403.

Defendants make substantially the same legal argument as they made in their motion to exclude evidence regarding an escort vehicle.  In addition, Defendants cite the Court to *St. Louis-San Francisco Ry. Co. v. Mills*, 271 U.S. 344, 46 S. Ct. 520, 70 L. Ed. 979 (1926).  In that case, the Supreme Court held that there was no evidence from which the jury could infer that failure to provide an additional guard or guards was the proximate cause of the decedent's death.  That case involved facts quite different from this one.  There, the undisputed evidence was as follows:

> [T]he shooting was done by one or more of three men standing of the rear platform of the car. They had come there after decedent and his companions had seated themselves in the car. Without warning they fired a volley into the car, and fled. Decedent and his guard were armed, but had no opportunity to defend themselves. On such a state of facts the jury should not have been permitted to conjecture what might have happened if an additional guard had been present.

*Mills*, 271 U.S. at 347.  Here, the facts differ substantially.  Whether an additional guard or guards might have protected someone during a shootout might be conjecture or speculation.  But whether the absence of visible warning devices might have prevented the collision is an issue on which the jury could draw a conclusion after considering the photographs of the accident scene, the types of

warning devices available but not used, and their own experiences in life.

Regions cites for support *Johnson v. Gmeinder*, 2000 WL 246585 (D. Kan. Feb. 10, 2000). In that case, the court cited to 49 C.F.R. § 392.22(b)(1), which provides that "the driver shall, as soon as possible, but in any event within ten minutes, place the warning devices . . . ." The defendants argued that there was no duty to place warning devices because the collision occurred within ten minutes. The district court held that a genuine issue of material fact remained regarding whether defendant Gmeinder could have placed the warning devices prior to the collision, *i.e.*, "as soon as possible" as required by the regulation. *Gmeinder*, 2000 WL 246585, at *2.

Defendants mention only the portion of the Federal Motor Carrier Regulations that says warning devices must be displayed within ten minutes. Defendants failed to mention that the regulations actually state that warning devices must be displayed "as soon as possible, but in any event within ten minutes." The ten-minute time frame is the minimum requirement if it is not possible to display warning devices sooner. Thus, the fact that there is no testimony that White had been stopped for more than ten minutes is irrelevant.

Regions offers Bentley's expert testimony to show that White was stopped for longer than just a short period of time. Regions also offers photographs of the accident scene and the fact that the collision occurred during the day. A jury could conclude from the evidence that White breached his duty under 49 C.F.R. § 392.22(b) to place warning devices as soon as possible. By considering photographs of the accident scene, that reflective devices might have been visible in daylight, and White's testimony, the jury could also conclude that the absence of warning devices was a proximate cause of the collision. Defendants' motion *in limine* to exclude evidence on the absence of warning devices is denied.

E.  **CHRIS MILICAN AND STATEMENTS BY TRAVIS LYNN HILL REGARDING ACCIDENT**

Defendants move to exclude statements made by Travis Lynn Hill to Chris Milican shortly

after the accident but before Hill was transported to the hospital.  In his deposition testimony,

Milican described his brief exchange with Hill:

> Q.    Okay.  Well, did you have any discussions or – or talk to who I will identify
>        as Travis Hill having been driving the Hill vehicle?
>
> A.    Yes.  I – we asked him if he was okay.  And he – he said that he was – he was
>        – he was – he was in shock.  And as we said it, he kept saying, "I am sorry.
>        I had nowhere to go."
>
> * * *
>
> Q.    Okay.  When – when he said to you, "I had nowhere to go," did you
>        understand that to be in connection with how the accident occurred?
>
> A.    Yes, sir.
>
> Mr. Wyatt:     Object to the form of the question.
>
> * * *
>
> Q.    (By Mr. Coughlin) And what I'm trying to get at here was did you understand
>        when Travis Hill said "I had nowhere to go," that he didn't have enough time
>        to try and react to the hazard that was presented to him; correct?
>
> A.    Correct.

Defendants move to exclude the statements for several reasons.  Regions Bank objects to the

exclusion of Hill's statements or Milican's testimony regarding those statements.

1.  *Relevance*

Defendants say the statement is irrelevant and thus inadmissible under Rules 401 and 402.

Defendants argue Hill's statement that he "had nowhere to go" is too vague or ambiguous to be

relevant to a determination of the physical layout of the accident scene.

Regions Bank argues that Hill's statement is relevant to the liability issues in this case.

Regions points out that this was the only statement that witnesses observed Hill to make immediately

13

after the accident, meaning it is highly relevant to the physical layout of the accident scene.

The Court finds that the statement is relevant to the physical layout of the accident scene and the issues of liability in this case. Defendants hypothesize regarding the potential meanings of "I had nowhere to go," including the possibility that Hill was referring to being trapped in the truck cab or to the median where his truck came to rest. A jury could conclude that, in response to being asked whether he was alright after a horrific accident which eventually caused his death, Hill's repeated statement of "I am sorry" and "I had nowhere to go" was a comment about how the accident occurred. Defendants rightly conjecture that his statement could have referenced being blocked by a vehicle on his left. However, whether Hill had nowhere to go because White's vehicle was negligently parked or because of some other factor is the precise issue of liability in this case. Hill's statement is relevant to that issue, and Defendants will have the opportunity at trial to argue that "nowhere to go" does not necessarily indicate that White's vehicle was negligently parked.

### 2.    *Hearsay Exceptions*

Defendants say the testimony is inadmissible hearsay under Rule 802, and that the present sense impression, excited utterance, and dying declaration exceptions in Rule 803 do not apply. Regions Bank argues that the testimony comes in under any of those three exceptions, as well as the residual exception in Rule 807.

Rule 803(1) defines a present sense impression as: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Defendants cite to *Untied States v. Beck*, 122 F.3d 676, 682 (8th Cir. 1997), which held that the present sense impression exception requires a close temporal relationship or "sufficient contemporaneity" between the declarant's perceiving the event and his statement describing the

event.  Defendants argue that Hill's statement is too ambiguous to be understood as referring to the accident, and that his statement lacks sufficient contemporaneity with the accident.

The Court has already addressed Defendants' argument that Hill's statement is too ambiguous to be construed as referring to the accident.  Regarding contemporaneity, Regions Bank says that the statement need only be "substantially contemporaneous" to the event, citing *Brown v. Tard*, 552 F. Supp. 1341, 1351 (D.C. N.J. 1982).  Because Hill's statement was made shortly after he was pulled from his burning cab, and that his statement was made to a witness who apparently arrived at the scene before the paramedics, it is reasonable to conclude that Hill's statement was sufficiently contemporaneous to the accident for purposes of Rule 803(1).  The Court finds that Hill's statements to Milican satisfy the present sense impression exception to the hearsay rule.  They may be offered for the truth of the matter asserted: that Hill had nowhere to go.

Rule 803(2) defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  Courts consider "the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement." *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007).  Again, Defendants contend that Hill's statement is too ambiguous and too temporally remote to be an excited utterance, and again the Court rejects that argument.  It is apparent that Hill's statement was made shortly after the collision, and it is reasonable to conclude that his statement was in reference to how the accident came about.  The statement comes in as an excited utterance under Rule 803(2).

Rule 804(b)(2) defines a dying declaration as: "a statement made by a declarant while

15

believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." Defendants cite the Court to *United States v. Tompkins*, in which the Eighth Circuit held that a dying declaration requires express testimony that "the decedent had lost all hope of recovery or that he knew death was near and certain." *United States v. Tompkins*, 487 F.2d 146, 149 (8th Cir. 1973). Regions Bank responds that such express testimony has been provided by Dr. Lachica, who stated in deposition testimony that Hill's severe burns put his survivability at five percent. However, Milican testified that Hill seemed calm despite his significant injuries, as if he was in shock. In view of the Court's holding that Hill's statement is admissible as a present sense impression or an excited utterance, it is unnecessary to decide whether the statement would be admissible as a dying declaration.

Finally, Regions Bank argues that Hill's statement is admissible under the residual exception in Rule 807. That rule provides that a statement not covered by Rules 803 or 804, but having equivalent circumstantial guarantees of trustworthiness, may not be excluded under the hearsay rule if certain elements are met. Because the Court has determined Hill's statements to be admissible under the present sense impression and excited utterance exceptions in Rule 804, the Court need not consider whether the residual exception is applicable.

### 3. *Unduly Confusing or Misleading*

Defendants say the testimony would be confusing or misleading to the jury and should be excluded under Rule 403. Again, Defendants argue only that Hill's statement is so vague or ambiguous that its probative value is outweighed by potential confusion or prejudice. The Court disagrees with Defendants regarding the extent of the statement's ambiguity. The statement is relevant to how the accident came about, and any confusion created by its ambiguity does not

16

substantially outweigh its probative value.

### 4.      *Non-Responsive Comments*

Defendants say the remaining portion of Milican's deposition testimony—after he answered

"yes" to the question of whether he spoke with Hill—should be stricken as non-responsive:

> Q.      Okay.  Well, did you have any discussions or – or talk to who I will identify
>         as Travis Hill having been driving the Hill vehicle?
>
> A.      Yes.  I – we asked him if he was okay.  And he – he said that he was – he was
>         – he was – he was in shock.  And as we said it, he kept saying, "I am sorry.
>         I had nowhere to go."

Defendants argue that Milican should have stopped after saying "Yes."

Defendants cite to *Anderson v. Nebraska Dep't of Social Services*, 253 Neb. 813, 572

N.W.2d 362 (1998).  In that case, an expert witness was asked whether he "consider[ed] all of the

records, including the original police reports, and doctors' reports and other information that was

furnished to [him.]"  He responded: "Yes.  And I thought they were helpful."  Upon objection, the

lower court ordered stricken the answer after the word "yes."  The Nebraska Supreme Court stated

that the answer was not responsive and thus properly stricken, although it did not comment on how

it determined the language to be non-responsive.  *Id.* at 817, 572 N.W.2d at 366.

The *Anderson* decision is not on point.  In that case, the Nebraska court could have

considered the witness's answer unresponsive because a clear "yes or no" question was asked, and

because the witness proceeded to comment on the helpfulness of the reports upon which he relied.

Here, Milican was asked if he had any discussions with Hill.  Implied in that question is an invitation

to explain the nature of those discussions.  Had Defendants' counsel objected at the deposition,

Plaintiff's counsel likely would have simply asked Milican to describe the discussions.  Milican was

17

not commenting on the helpfulness of reports—he was elaborating on the question of whether he had discussions with Hill.  His answer was responsive to the nature of the question in the context in which it was raised.

### 5.     *Personal or Firsthand Knowledge*

Defendants say there is insufficient evidence to show that Hill had a personal or first-hand knowledge of his physical surroundings as required by Rule 602.  That rule states: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."  Defendants argue that there is insufficient evidence to show that Hill was in a position to perceive the accident site prior to his statement "I had nowhere to go."

Regions Bank cites the Court to *United States v. Wirtz*, 357 F. Supp. 2d 1164 (D. Minn. 2005).  In that case, the court stated that the "foundation requirement of personal knowledge need not be proved by the witness's own testimony."  *Id.* at 1169 (citing *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1332 (10th Cir. 1984)).  Personal knowledge can include "inferences and opinions, as long as they are grounded in personal observations and experience."  *Id.* (citing *United States v. Rodriguez*, 162 F.3d 135, 144 (1st Cir. 1998)).

Hill was involved in, and died as a result of, the collision between his and White's tractor-trailers.  Although Hill might not have been in a position to perceive the accident scene after the collision due to his fatal injuries, the fact that he was driving the tractor-trailer when it collided with White's vehicle means that his statement was grounded in personal observation and experience leading up to the collision.  There is sufficient evidence to satisfy Rule 602's requirement that he have personal knowledge of the matter.

18

### 6.    *Lay Opinion*

Defendants say Hill's lay opinion that he "had nowhere to go" is impermissible under Rule 701.  That rule provides that a lay opinion witness's testimony is limited to opinions that are "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Defendants cite the Court to *Donovan v. Mishy Sportswear, Inc.*, 200 F. Supp. 2d 1103 (E.D. Mo. 2001).  In that case, the decedent died in a fire accident while cooking at home.  While in the hospital, she stated that she did not know what happened because it happened so fast.  The district court held that her statement that "it happened so fast" was merely an opinion, without the proper foundation to satisfy Rule 701.  *Id.* at 1107-08.  Defendants provide no reasoning as to how that case should apply to Hill's statement.  Defendants merely conclude that his statement is an opinion and that it fails to satisfy Rule 701.

In this case, the Court is not convinced that Hill's statement is an opinion covered by Rule 701.  Unlike in *Donovan*, Hill's statement that he "had nowhere to go" is not opining on the speed with which the accident occurred.  Even if Hill's statement is a lay opinion, it meets the remaining requirements of Rule 701.  His statement is rationally based on his perception of the accident.  It is helpful to determining a fact in issue: whether Hill could have avoided colliding with White's vehicle.  His statement is not based on scientific, technical, or other specialized knowledge.  Defendants make no argument on whether Hill's alleged opinion satisfies the remainder of Rule 701.  The Court finds that it does.

7.      *Milican's Lay Opinion*

Finally, even if Hill's statements are admissible through Milican, Defendants say that Milican's opinion or interpretation of what those statements meant is speculation or conjecture precluded by Rule 701, and that his deposition testimony was in response to an objectionable leading question.  Milican stated as follows:

Q.      Okay.  When – when he said to you, "I had nowhere to go," did you understand that to be in connection with how the accident occurred?

A.      Yes, sir.

        Mr. Wyatt:      Object to the form of the question.

* * *

Q.      (By Mr. Coughlin) And what I'm trying to get at here was did you understand when Travis Hill said "I had nowhere to go," that he didn't have enough time to try and react to the hazard that was presented to him; correct?

A.      Correct.

Milican's statements appear to be rationally based on his perception of what Hill meant. They are helpful to understanding what Hill meant in the context in which he was speaking to Milican.  Therefore, Milican's statements meet the requirements in Rule 701 for admissibility of a lay opinion.

Defendants also argue that Milican's statements should be excluded as the product of a leading question on direct examination.  Defendants' counsel objected to the form of the first question, but not the second.  The first question, found on page 39 of Milican's deposition testimony, asked whether Milican understood Hill's statement to be in connection with how the accident occurred.  Milican responded in the affirmative.  The first question did not suggest the answer to that question.  The second question, found on page 136, was a leading question that asked whether

20

Milican understood Hill to mean that he did not have enough time to react.   Again, Milican responded in the affirmative, but Defendants' counsel did not object.

"The use of leading questions is a matter left to the discretion of the district court." *United States v. Schepp*, 746 F.2d 406, 410 (8th Cir. 1984).   Based on the submitted portions of Milican's deposition testimony, the Court does not find a "pattern of leading questions." *Id.*   To the extent that either of the two questions at issue were leading, the Court finds that they were necessary to develop his deposition testimony. *Id.*

## F.   PRIOR BLOWOUTS ON DAILY EXPRESS VEHICLE

The Daily Express vehicle driven by White experienced two prior blowouts.   Defendants seek to exclude evidence of the prior blowouts, arguing that such evidence has no probative value on the condition of the tire that went flat on the day of the accident, and that it does not show that Daily Express was negligent in maintaining its tires.   Defendants cite to several cases for the proposition that the mere occurrence of an incident does not raise a presumption of negligence. *Dixie Furniture Co. v. Deason*, 226 Ark. 742, 293 S.W.2d 706 (Ark. 1956); *Kansas City Southern Ry. Co. v. McKenzie*, 223 Ark. 890, 269 S.W.2d 326 (1954); *Kansas City, S. & M. R. Co. v. Summers*, 45 Ark. 295 (1885); *Trotter v. Bowden*, 81 Ark. App. 259, 101 S.W.3d 264 (2003).   Thus, Defendants assert that the evidence should be excluded because it is non-probative (Rule 401), irrelevant (Rule 402), and will unnecessarily confuse and mislead the jury (Rule 403).

Regions Bank responds that the blowout that caused White to pull over was the third such blowout within thirty days of the accident.   Regions cites to *Heinrich v. Harp's Food Stores, Inc.*, 52 Ark. App. 165, 915 S.W.2d 734 (1996).   There the court noted the Arkansas rule that "where notice of a danger or defect is in issue, evidence of similar occurrences is admissible, but, only when

it is demonstrated that the events arose out of the same or substantially similar circumstances." *Heinrich*, 915 S.W.2d at 736 (citing *Fraser v. Harp's Food Stores, Inc.*, 290 Ark. 186, 718 S.W.2d 92 (1986)). "[P]roof that a defendant had or should have had knowledge of a dangerous condition is relevant under most theories of negligence." *Id.* Regions argues that the history of blowouts is relevant to show that Daily Express was negligent in maintaining its tires on White's vehicle. Regions also says it shows that Daily Express knew of the hazards associated with White's vehicle, yet failed to properly maintain its tires, to provide an escort vehicle, and to provide adequate policies or training on the use of warning devices.

Defendants are correct that the mere occurrence of an event does not give rise to the presumption of negligence. However, in light of the Arkansas law as stated in *Heinrich*, evidence of prior blowouts within thirty days of the accident is relevant and admissible. Prior blowouts are substantially similar incidents that show Daily Express had knowledge of a dangerous situation. If Daily Express had knowledge of a dangerous situation and yet failed to provide an escort vehicle— which is relevant to proximate cause—then Daily Express's knowledge of the prior blowouts is relevant to whether Daily Express was negligent.

## G.   EXPERT OPINION OF JOHN BENTLEY

John Bentley is Plaintiff's accident reconstruction expert. In his deposition testimony, Bentley stated as follows:

> Q.   Talking about the escort vehicle where we're alerting approaching traffic with an active warning, we're alerting approaching traffic as to what?
>
> A.   Well, it's a possible conflict to travel. There's a possible hazard. I mean, typically, when you have a wide load, you have an escort vehicle. So, I mean, most of your motoring public is aware, when there's an escort vehicle, to pay particular attention.

Defendants argue that his statement, "typically, when you have a wide load, you have an escort vehicle," should be excluded under Rule 702 and *Daubert*. Defendants say Bentley gave his opinion with no knowledge of industry custom or applicable regulations regarding escort vehicles.

Regions states that Bentley's opinion on the need for an escort vehicle was based on his understanding of the permit issued by the Arkansas Highway Department and the history of blowouts on White's vehicle. Bentley also offers expert opinion on how the presence of an escort vehicle could have prevented the collision if Daily Express had provided one.

Regions bases its negligence claim against Daily Express not on statutory noncompliance, but on breach of duty of ordinary care. Bentley's knowledge of the statutes is not dispositive of whether his testimony is admissible expert testimony, since his expert knowledge is also relevant to Regions' negligence claim based on the duty of ordinary care. In addition to Bentley's testimony, Regions relies on the Arkansas permit language, photographs of the accident scene, and the prior blowouts to show that Daily Express had a duty to provide an escort vehicle. Although Bentley's testimony may not be admissible expert testimony to show that Daily Express had a statutory duty to provide an escort vehicle, it is proper expert testimony regarding Daily Express's duty of ordinary care in light of the surrounding circumstances. Defendants will have the opportunity to clarify that Bentley had no expert knowledge regarding whether industry custom would typically require an escort vehicle for wide loads. Bentley's testimony is also admissible expert testimony regarding whether the absence of an escort vehicle was a proximate cause of the collision.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion *in limine* regarding previous claims and settlements is GRANTED (Docket #74); motion *in limine* to make a *per diem* argument to the jury

is GRANTED (Docket #80); and motion *in limine* to exclude Hill's prior criminal history is GRANTED (Docket #82).   The Court reserves ruling on Plaintiff's motion *in limine* to exclude evidence of White's medical condition or treatment (Docket #76).  Plaintiff's motion *in limine* to allow the testimony of Milican regarding Hill's statements to him is DENIED as moot (Docket #78).

Defendants' motion *in limine* to exclude any evidence regarding any alleged independent act of negligence of Daily Express's is DENIED (Docket #61); motion *in limine* to exclude the testimony of Ralph Scott regarding loss of life damages is DENIED as moot (Docket #63); motion *in limine* to exclude any testimony regarding Bentley's prior employment by Defendants' law firm is GRANTED IN PART and DENIED IN PART (Docket #84); motion *in limine* to exclude evidence on the absence of an escort vehicle is DENIED (Docket #86); motion *in limine* to exclude evidence on the absence of warning devices is DENIED (Docket #88); motion *in limine* to exclude Milican's testimony regarding Hill's statements to him is DENIED (Docket #90); motion *in limine* to exclude evidence of prior blowouts is DENIED (Docket #92); and motion *in limine* to exclude the expert testimony of John Bentley is DENIED (Docket #94).

IT IS SO ORDERED this 24th day of September, 2009.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

24